IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JAMES H. KNIGHT d/b/a J.R.'S RESTAURANT,     PLAINTIFFS
STABLES DOWNTOWN GRILL, LLC., MARGARETE'S
FINE CHOCOLATES, INC., MID-SOUTH MACHINERY, INC.,
EAST MAIN PAWN SHOP, INC., EAST MAIN MOTORS, INC.,
GIOVANNI KAYE DAVIS d/b/a ELVIS PRESLEY EAST HEIGHTS
CLEANERS & LAUNDRY, GOODTIME CHARLIE'S, PHEBIE
SANDEFER d/b/a FUGLEY'S SPORTS BAR & GRILL, WINFRED
SHUMPERT d/b/a DR. LOVE'S BOTTOM LINE CLUB, MABEL
ETHERIDGE d/b/a R & M LOUNGE, ROY TIMMS d/b/a BREW-HA'S
BAR & GRILL, SANDRA ALFREDS d/b/a SANDI'S DESIGNATED
DRIVERS

V.     CASE NO. 1:06-CV-00274

CITY OF TUPELO     DEFENDANT

## MEMORANDUM OPINION

This cause comes before the court on the plaintiff's motion [20] for declaratory and/or injunctive relief pursuant to Rules 57and 65 of the Federal Rules of Civil Procedure.

On October 4, 2006, the plaintiffs filed a complaint in the County Court of Lee County, Mississippi seeking temporary and permanent injunctions and a declaratory judgment on the grounds that a city-wide smoking ban ordinance enacted in the city of Tupelo, Mississippi violated the state and federal constitutions. On October 5, 2006, the City of Tupelo removed the action to federal court. The plaintiffs subsequently filed a motion to remand, which was denied after both parties presented oral arguments at a hearing held on November 1, 2006. The plaintiffs' request for a preliminary injunction was also denied after a hearing held on November 9, 2006.

1

A party seeking a permanent injunction must establish: 1) a likelihood of ultimate success on the merits; 2) that a failure to grant the injunction will result in irreparable injury; 3) that the injury outweighs any damage that the injunction will cause the opposing party; and 4) that the injunction will not disserve the public interest. *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006).

The Declaratory Judgment Act affords an added remedy to one who is uncertain of his rights and who desires early adjudication thereof without having to wait until his adversary should decide to sue and to act at his peril in the interim. *Okpalobi v. Foster*, 190 F.3d 337, 347 (5th Cir. 1999). The Act, 28 U.S.C. § 2201, is an enabling act which confers discretion on the courts rather than an absolute right upon the litigant. *Public Service Commission of Utah v. Wycoff Co., Inc.*, 344 US 237, 241, 73 S.Ct. 236, 239 (1952). *See also* Fed. R. Civ. Pro. 57. Under the Declaratory Judgment Act this court may enter an expedited ruling once sufficient evidence has been entered into the record. This court is satisfied that sufficient proof of facts, briefs, and arguments have been presented to enable the court to rule on these matters.

Issues

The complaint alleges that the ordinance violates the state and federal constitutions on the following grounds: 1) the ordinance violates the Takings Clause by effecting a regulatory taking; 2) the ordinance is impermissibly vague; 3) the ordinance violates the Equal Protection Clause; 4) the ordinance is unconstitutionally broad; 5) the ordinance violates the Fourth Amendment of the United States Constitution; 6) the ordinance violates the Commerce Clause of the United States Constitution; 7) the ordinance is unconstitutional in that it fails to use the least restrictive means to achieve the public health and safety concerns enumerated in the ordinance; and 8) the

ordinance is contradictory and unenforceable with the other city ordinances.

A speaking order entered in this court on November 9, 2006, struck language in §13-62 of the ordinance rendering the plaintiffs' Fourth Amendment claim moot.

Taking

The plaintiffs have alleged a regulatory taking. A regulatory taking is effected when the regulations do not substantially advance legitimate state interests or deny an owner economically viable use of land. *D.A.B.E., Inc. et al., v. City of Toledo*, 292 F. Supp.2d 968, 970 (N.D. Ohio 2003). A regulatory taking claim has two components. *D.A.B.E., Inc.*, 292 F.Supp.2d at 971. First, the plaintiff must establish that the regulation has in substance taken property. *Id*. Second, the plaintiffs must demonstrate that any proffered compensation is not just. *Id*.

There are also two levels of regulatory takings. *Id.* A regulation that allows the property owner no productive or economically beneficial use of land entitles the owner to just compensation under the Fifth Amendment while a less intrusive regulation that prevents the property owner from *some* economic use of his land may still entitle the owner just compensation depending on the level of the intrusion and the governmental interest at stake. *Id*. In this matter, the plaintiffs have alleged the less intrusive level of regulatory taking, a partial taking, of the economically viable use of property.

The inquiry into whether a taking has occurred is a factual query; however, the Supreme Court has identified several cogent factors to consider in determining whether there has been a taking: 1) the character of the governmental action; 2) the economic impact of the regulation on the claimant; and 3) the extent to which the regulation has interfered with the claimant's distinct investment backed expectations. *Id*.

The character of the governmental action in enacting this smoking ban ordinance involves protecting the public health. The preamble to the ordinance states:

> WHEREAS, scientific studies have found that tobacco smoke is a major contributor to indoor air pollution; and
> WHEREAS, scientific studies, including studies conducted by the Surgeon General of the United States, have shown that breathing secondhand smoke is a significant health hazard; and
> WHEREAS, the Mayor and City Council find and declare that the purposes of this ordinance are to protect the public health and welfare of its citizens by prohibiting smoking in public places and places of employment;

Council President Dick Hill testified that council members were particularly swayed to enact this ordinance by the Surgeon General's report, which noted specifically the dangers of secondhand smoke. The health implications and costs related to smoking and second-hand smoke are a valid, legitimate concern of the Tupelo City Council.

The plaintiffs presented testimony that the ordinance prohibiting smoking in public places has economically impacted their businesses by causing a decrease in profits. Plaintiff Knight testified that due to reduced patronage he operates his business three nights a week rather than four nights a week. A decrease in profits is indicative of a taking; however, a decrease in business profits alone is not conclusive of a taking.

The third factor, interference with investment backed expectations, weighs against the finding of a taking. As medical science has advanced, the dangers of secondhand smoke have become common knowledge in this country. In fact, the state of Mississippi engaged in litigation against tobacco companies, in part because of the dangers tobacco products pose to the health of the public. With an ever increasing number of cities and states around the country banning smoking in public places, it is unreasonable for business owners not to recognize the possibility

that their businesses could be subjected to the same sort of regulation. After examining these three factors, this court concludes that a taking has not occurred.

Vagueness and Enforceability

The complaint alleges that the ordinance is vague and fails to provide adequate notice as to what persons, places, or entities are covered by the ordinance, and that it is not clear whether a violation of the ordinance is civil or criminal. The Fifth Circuit employs a two-part void for vagueness test when evaluating criminal laws. *Roark & Hardee L.P. v. City of Austin*, 394 F.Supp.2d 911, 916 (W.D. Tex. 2005) (*citing United States v. Escalante*, 239 F.3d 678, 680 (5th Cir. 2001). Vagueness may invalidate a criminal law for either of two reasons: 1) it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; or 2) it may authorize and even encourage arbitrary and discriminatory law enforcement. *Roark*, 394 F.Supp.2d at 916.

Examination of the ordinance as amended on December 5, 2006, does not cause this court to find that the ordinance is impermissibly vague. In determining whether the ordinance provides notice as to what kind of conduct the ordinance prohibits, an examination of §13-57 of the ordinance provides guidance. §13-57 is entitled "Smoking Prohibited in Indoor Public Places and In Places of Employment" and states: "Except as otherwise provided, it shall be unlawful for any person to smoke in indoor public places and in places of employment as defined in § 13-55.13 herein, including but not limited to the following:" The section then goes on to list a variety of places smoking is not permitted and references the reader to §13-55 which defines the terms used in § 13-57.

This court also examined § 13-61, entitled "Proprietor's Responsibilities." This section

5

lists the affirmative steps a proprietor must take in order to comply with the ordinance. 1) "The proprietor, employer, or other person in charge of premises regulated hereunder, upon either observing or being advised of a violation, shall advise the smoker of this ordinance and request that they extinguish their cigarette or tobacco product and refrain from smoking; 2) The proprietor, employer, or other person in charge of the premises, shall post signage as required by this ordinance; and 3) The proprietor, employer, or other person in charge of premises, shall not provide ashtrays in areas where smoking is prohibited. All ashtrays shall be removed from any area where smoking is prohibited by this Article by the owner, operator, manager, or other person having control of the area." These three requirements are stated in plain language and are the only requirements affirmatively directed at proprietors in the ordinance.

The plaintiffs complain of §13-63, entitled "Violations and Penalties." Of particular concern to the plaintiffs is that the title of the ordinance indicates that it is civil in nature, but § 13-63(b) states that "any person . . . who fails to comply with the provisions of this Article shall be guilty of a misdemeanor . . . " Miss. Code Ann. §41-3-57 grants a municipality the authority to pass public health laws or ordinances and § 41-3-59 states that violation of " . . . any municipal ordinance herein authorized to be made shall be guilty of a misdemeanor . . . " As there is statutory authority making violation of the ordinance a misdemeanor, and language in the ordinance to the same effect, the word "Civil" is hereby stricken from the title of the ordinance to eliminate inconsistency within the ordinance itself.

The character of language innately lends itself to multiple and/or creative interpretations of words, but ordinary usage of the words used in the ordinance would put an ordinary person on notice of where smoking is prohibited and what a business owner should do to comply with the

6

ordinance. With the slight change in the language of the title, ordinary persons are put on adequate notice of their responsibilities under the ordinance and the penalties for violation of the ordinance.

The second prong of analysis for vagueness involves arbitrary and discriminatory law enforcement. The enforcement provision of §13-62, as amended by the City, grants the Chief of Police or designee the right to enter, subject to law, upon the premises named in the ordinance to determine whether there is compliance with the ordinance. Enforcement will be through issuance of a summons and complaint. Further, §13-62 provides an option for registering a complaint under the ordinance, requires that notice be given to all applicants for business licenses in the City of Tupelo, and that inspections for compliance with this ordinance shall be held when an establishment is undergoing otherwise mandated inspections. This ordinance is at all times subject to the state and federal constitutions, and it is presumed that all requirements of due process are to be afforded to persons or entities subject to penalty under this ordinance. As such, this court finds that the ordinance provides sufficient guidance for enforcement of the ordinance. Therefore, the plaintiffs fail on their vagueness and enforceability argument.

Equal Protection Clause

The Equal Protection Clause requires the government to treat similarly situated people alike. *Coalition for Equal Rights, Inc. v. Owens*, ---F.Supp.2d—, 2006 WL 3025831 *3 (D. Colo. 2006.) The plaintiffs acknowledge that smokers are not considered a suspect or quasi-suspect class; however, the plaintiffs assert that the City of Tupelo did not use the least restrictive means available when implementing the smoking ordinance. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes upon

fundamental constitutional rights must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. *NYC C.L.A.S.H., Inc. v. City of New York*, 315 F.Supp.2d 461, 481 (S.D.N.Y. 2004)(quoting *FCC v. Beach Communications*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) . There is no least restrictive means requirement under rational basis review.

A law is rational " . . . if its distinctions are rationally related to any conceivable government purpose, whether or not stated in the law . . . "*Coalition for Equal Rights, Inc*., 2006 WL 3025831 *3. The plaintiffs state that the ordinance exemption for private clubs violates the Equal Protection Clause because it is a means for politically powerful organizations to escape being subjected to the ordinance. However, the purpose of the ordinance as stated in its preamble is to "protect the public health and welfare of its citizens by prohibiting smoking in public places and places of employment." §§13-57 and 58 state that when the general public is invited to a private club, smoking is not permitted. Further, if a private club hires employees, smoking is not permitted. The exceptions for private clubs and organizations and the limitations placed on them are consistent with the ordinance intent of protecting *public* health; therefore, the plaintiffs' Equal Protection claim must fail.

Overbreadth

The overbreadth doctrine applies primarily in the First Amendment context to allow facial challenges to laws that may chill free speech rights. *Roark*, 394 F.Supp.2d at 919. Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech. *Virginia v. Hicks*, 539 US 113, 123, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003). Conduct such as smoking is not generally

8

considered speech. *NYC C.L.A.S.H., Inc.*, 315 F.Supp.2d at 476. The plaintiffs have not asserted that the ordinance violates the First Amendment, nor have they asserted that the rights they seek to protect in this instance involve smoking as a form of speech. Accordingly, overbreadth analysis is inappropriate.

Interstate Commerce Clause

The dormant commerce clause confines the states' power to burden interstate commerce. *Texas Mfr'd Housing Ass. Inc. v. City of Nederland*, 101 F.3d 1095, 1101 (5th Cir. 1996)(citing *Oregon Waste Sys., Inc. v. Oregon Dep't Envtl. Quality*, 511 U.S. 93, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994)). The first step in analyzing the constitutionality of legislation under the dormant commerce clause is to determine whether the challenged statute regulates evenhandedly with only 'incidental' effects on interstate commerce, or discriminates against interstate commerce either on its face or in practical effect. *Texas Mfr'd Housing Ass. Inc.,* 101 F.3d at 1101. A statute that burdens interstate commerce only incidentally is subject to the flexible balancing approach of *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970), which provides that such a statute "will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Id.* The *Pike* Court went on to state that "if a legitimate local purpose is found, then the question becomes one of degree." *Id*. The extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities. *Id.* The party challenging the statute bears the burden of showing discrimination, but once discrimination has been demonstrated, the burden shifts to the state to demonstrate both that the statute serves a legitimate local purpose and that this purpose could not

9

be served as well by available nondiscriminatory means. *Id.*

The smoking ban enacted by the City of Tupelo does not address commerce at all. Since the ordinance does not discriminate between interstate and intrastate commerce, the question now becomes whether the incidental burdens placed on interstate commerce by the ordinance are clearly excessive in relation to the putative local benefits.

The plaintiffs present a very attenuated argument that the ordinance has the effect of causing restaurant and bar owners to lose profits, which in turn causes servers and bartenders to make less in tips, bar owners not to hire live musicians, and forces owners to reduce employees. This effect continues because food suppliers experience a decrease in revenues as they sell less food to restaurants and alcohol suppliers experience a decrease in revenues as they sell less alcohol to bars. The plaintiffs assert that the cumulative effect is that all of the people who have lost money can no longer afford to buy as much food when shopping for groceries, engage in special activities, go on vacations, or go out to dinner, and that this effect continues to multiply itself thereby inhibiting interstate commerce. This court is not convinced that interstate commerce will be inhibited in this manner.

This court does not agree that the burden on interstate commerce will be so great that it outweighs the local benefits. While it is likely that restaurants and bars may suffer a slight decrease in profits, this burden is not clearly excessive in light of the health benefits to the citizens of Tupelo. The plaintiffs have failed to show that the ordinance discriminates against out of state business. In fact, the ordinance provides no economic advantages to *any* group of people since it applies to all public places and all who patronize public places within the city of Tupelo.

In essence, this cause mirrors the tension between those who wish to act and do as they please in public places, whether for profit or leisure, as opposed to the right of the government to police such activities for the common good. The scientific community has established beyond doubt that smoking is hazardous to both the smoker and his neighbors. The government and public bear the consequences of tobacco usage through higher health and related costs. The governmental interest in protecting the general public from further health risks clearly outweighs any alleged chilling of individual rights to smoke in public.

ACCORDINGLY, the plaintiff's motion for a permanent injunction is DENIED. It is further ordered that the word "Civil" is STRICKEN from the ordinance title and this cause is DISMISSED WITH PREJUDICE.

SO ORDERED, this the  15th  day of December, 2006.

                                                   /s/ Michael P. Mills                
                                                **UNITED STATES DISTRICT JUDGE**